**UNITED STATES DISTRICT COURT**
**NOTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTISHA CARROLL, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LCA-VISION, Inc., d/b/a LASIKPLUS,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No. 24-cv-12691<br><br>**CLASS ACTION COMPLAINT** |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>**

NOW COMES the Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, by and through its attorneys, CONNOLLY KRAUSE LLC, and for its Memorandum of Law in support of its Motion to Dismiss the Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) states the following in support.

This complaint is just one of at least six similar lawsuits filed by Bursor & Fisher P.A. nationwide in December 2024 in an attempt to create a back door "private right of action" for alleged HIPAA violations using the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1), *et seq*. and state law negligence claims. Just as so many courts across the country have found in other similar cases – so too should this Court find Plaintiff's complaint insufficient to maintain this lawsuit and grant Defendant's motion to dismiss.

Plaintiff, ARTISHA CARROLL ("Plaintiff") brings this lawsuit against Defendant, LCA-VISON, INC. d/b/a LASIKPLUS ("LASIK") on behalf of a putative class challenging LASIK's alleged use of the Facebook Tracking Pixel ("Meta Pixel")[1] tool installed on its website. The

1 "In late 2021, [Facebook] changed its name to Meta Platforms, Inc. but the social media platform is still known as Facebook." *In re Meta Pixel Healthcare Litigation*, 2022 U.S. Dist. LEXIS 230754 *5, n. 1 (N.D. Cal. Dec. 22, 2022). Facebook and Meta will be used interchangeably throughout, and both are meant to reference the same entity.

complaint alleges that LASIK's use of the Meta Pixel allowed Facebook to receive certain data or information about Facebook users after a visit to the LASIK website. The complaint claims that after visiting the LASIK website, Facebook users, including Plaintiff herself, subsequently began receiving targeted advertisements on Facebook. Plaintiff and the putative class seek relief for alleged violations of the ECPA, and for LASIK's alleged negligence in failing to protect Plaintiff's and putative class's personally identifiable information ("PII") and/or protected health information ("PHI") from alleged disclosure to a third party.

First, dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is warranted because Plaintiff lacks standing to bring these claims because Plaintiff cannot tie the alleged injuries to any conduct of LASIK. Additionally, the complaint fails to state a claim for which relief may be granted, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The allegations that LASIK violated the ECPA fail to show (1) LASIK illegally intercepted any communications or (2) LASIK intentionally disclosed or used the contents of any intercepted communication. Additionally, the complaint fails to show that the crime or tort exception should apply since LASIK was a party to the communication that Plaintiff alleges was intercepted. Finally, Plaintiff's claims that LASIK was negligent also fail because the allegations are insufficient to support all the necessary elements of a common law negligence claim. Either under Rule 12(b)(1) or Rule 12(b)(6), dismissal should be granted.

## BACKGROUND

The background and behind the scenes workings of the Meta Pixel have been thoroughly explored in several similar, pending class action cases pending in various jurisdictions nationwide. For example, an opinion by Honorable William H. Orrick in the United States District Court for the Northern District of California details how the tracking pixel works. *See In re Meta Pixel Healthcare Litigation*, 2022 U.S. Dist. LEXIS 230754 *6-8 (N.D. Cal. Dec. 22, 2022).

> The Meta Pixel is a free and publicly available piece of code that Meta allows third-party website developers to install on their websites. The Pixel is customizable: website developers choose which types of user action to measure, and program the Pixel accordingly. Website developers in a range of industries use the Pixel. In a nutshell, the Meta Pixel allows website developers to learn: (1) if and when website users take certain actions on a website, and (2) generalized information about website users, which can be used for targeting advertising.

*Id.* at *6-7. Judge Orrick goes on to provide an example of a consumer that visits a shoe company website looking to purchase shoes.

> Every time a user accesses the [shoe] website and clicks on the "sale" button (*i.e.* an "Event" occurs), it triggers the Meta Pixel, which then sends certain data to Meta. Meta will attempt to match the customer data that it receives to Meta users—Meta cannot match non-Meta users.

*Id.* at *7-8 (emphasis added). These customers that triggered the "Event" will then receive targeted ads on Facebook. *Id.* at *8. Importantly, "**Meta does not reveal the identify of the matched users to the shoe company**." *Id.* (emphasis added). Combining the Plaintiff's allegations with the findings from the *In re Meta Pixel Healthcare Litigation* cases; Meta Pixels can only identify Facebook users, and only Facebook users can have their ID identified by Meta Pixels and allegedly transmitted to Facebook.

Facebook provides all visitors to its site access to the "Privacy Center" where Facebook details the information that it collects and how that information is used.[2] The Facebook Privacy Policy in place in or around November 2023 states that Facebook collects "Information from partners, vendors, and other third parties."[3] Facebook further explains that "[w]e use the information we collect to provide a personalized experience to you, including ads, along with the other purposes we explain in detail below."[4] Facebook's Privacy Policy also explains to its users about the exchange of information with "integrated partners," which is defined in the policy as "A

2 This Court may take judicial notice of publicly available information for the purposes of the motion to dismiss. *See Clark v. Microsoft Corp.*, 688 F.Supp3d 743, 746 (N.D. Ill. Aug. 21, 2023).
3 https://www.facebook.com/privacy/policy/version/5601719079934335/ (last visited January 29, 2025)
4 *Id.*

partner who uses technologies that help you make a connection to them through our Products, including plugins, login, checkout experiences, instant games, and other such integrations."[5]

Everyone who creates a Facebook account is informed of and assents to the "Terms of Service" that control the user's "use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software that Meta offers." *In re Meta Pixel Healthcare Litigation*, 2022 U.S. Dist. LEXIS 230754 at *11. The "Terms of Service" also informs users about the data that is collected and how that data is used for the purposes of personalized ads. *Id.* at *12. Given the information detailed in Facebook's policies, the allegations in this complaint of surreptitious interception of communications in violation of the ECPA cannot be squared with Plaintiff's requisite assent. The background of the Meta Pixel technology and the information provided to Plaintiff as a Facebook user are important. The above should be heavily considered by the court at each section of the following memorandum of law because it forms the foundation of what Plaintiff, and the putative class knew or should have known about Facebook and how users' information was shared. The above is the reason why the allegations in the complaint must be dismissed.

## LEGAL STANDARD

Plaintiff cannot establish all the requirements of standing in this case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1995). First, the Plaintiff must show an "injury in fact," which is the "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent not conjectural or hypothetical." *Id.* Importantly, "there must be a causal connection between the injury and the conduct complained of…" *Id.* Based on the facts alleged, dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate because Plaintiff will be unable to

---

5 https://www.facebook.com/privacy/policy/version/5601719079934335?annotations[0]=Definition-IntegratedPartner (last visited January 29, 2025)

establish that an alleged injury is fairly traceable to LASIK.

The complaint in this case also fails to satisfy the federal pleading standards. A complaint must "contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted). When presented with a motion to dismiss, the court should disregard any allegations that represent pure legal conclusions. *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If the complaint alleges facts "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF LACKS STANDING WARRANTING DISMISSAL.

Standing is a threshold requirement for any case and if the plaintiff lacks standing, then the cause of action must be dismissed because the court lacks jurisdiction. Here, Plaintiff cannot allege an injury in fact that is fairly traceable to LASIK. As the party invoking federal jurisdiction, Plaintiff has the burden to allege facts sufficient to show that this Court has subject matter jurisdiction. This is "not [a] mere pleading requirement but rather an indispensable part of the plaintiff's case…" *Id.* at 561. The first step "[i]n evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or a facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). When a party raises a factual challenge, the argument is that "there is *in fact* no subject matter jurisdiction." *Id.* (emphasis in original).

Plaintiff does not allege any facts in the Complaint that could support standing. "To confer standing an injury must be concrete, must actually exist, must be real, not abstract, but not necessarily tangible." *Doe v. Genesis Health Systems*, 2024 U.S. Dist. LEXIS 149581 *15 (N.D.

Ill. Aug. 21, 2024) quoting *Groshek v. Time Warner Cable, Inc.*, 865 f.3d 884, 886 (7th Cir. 2017) (internal quotations omitted). Plaintiff lacks support for the second requirement for standing – that the alleged injury "be fairly traceable to the defendant's conduct," because as Plaintiff has repeatedly admitted in her complaint, Facebook is the party responsible for allegedly intercepting the communication and collecting the Facebook user's activity. *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. April 30, 2024); (ECF 1, ¶ 33). Additionally, Facebook is responsible for collecting the information obtained through the Meta Pixel and using that information to create customized ads for the Facebook user. (ECF 1, ¶ 35).

Plaintiff alleges that she and the putative class suffered "fear, anxiety and worry about the status of their PII and PHI, diminution in the value of their personal data…and/or a loss of control over their PII and PHI…" (ECF 1, ¶ 109). These alleged damages cannot be reasonably traceable to LASIK because all the conduct complained of that allegedly caused the injury is due to Facebook and any connection to LASIK is far to attenuated in order to establish standing in this case. *Pit Row, Inc.*, 101 F.4th at 502. Once Plaintiff created a Facebook account, she consented to be tracked by Facebook across the internet. Plaintiff cannot establish how LASIK's hosting of a Meta Pixel caused her or any putative class members 1) any injury, or 2) any injury traceable to LASIK's conduct. Therefore, dismissal of the complaint should be granted pursuant to Fed. R. Civ. P. 12(b)(1).

## II. THE COMPLAINT FAILS TO SUPPORT A CAUSE OF ACTION UNDER THE ELECTRONIC COMMUNICATIONS PRIVACY ACT IN COUNT I.

Plaintiff attempts to impose liability under the ECPA not upon Facebook, but upon the owners of webpages that host the Meta Pixel on the theory that: 1) the identification of Facebook users by the Meta Pixel and alleged transfer of information about those Facebook users from the Pixel to Facebook is an illegal interception, and 2) the interception contained information protected by HIPAA. Plaintiff and every putative class member voluntarily entered into a relationship with

Facebook, as dictated by Facebook's policies, wherein the individuals agreed to access Facebook's services in exchange for Facebook's ability to track their online activity via a publicly displayed Facebook ID and other technologies. LASIK did not intercept information by allegedly placing a Meta Pixel on its website because it was a party to all communication it received from the Plaintiff and it did not receive the contents of any information (or intercept any communication) between Plaintiff and Facebook. Merely hosting a Meta Pixel does not constitute LASIK "intentionally disclos[ing]" or "intentionally us[ing]" or even accessing the contents of any alleged intercepted electronic communications to support a violation of the ECPA.

### A. Plaintiff Fails to Allege Any Interception of Communication By LASIK.

LASIK did not "intercept" any communications as required by the ECPA – a fact that Plaintiff concedes in the complaint. Under the ECPA, also known as the Wiretap Act, it is unlawful for any person to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1)(a). The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). LASIK "cannot be held liable under the ECPA if it simply acts as a conduit to and from an entity that acquires the contents of a communication, but does not itself acquire those contents." *Valentine v. Wide Open West Finance, LLC*, 2013 U.S. Dist. LEXIS 139071 *10 (N.D. Ill. Sept. 27, 2013) quoting *Kirch v. Embarq Mgmt. Co.*, 2011 U.S. Dist. LEXIS 92701 *20-21 (D. Kas. Aug. 19, 2011).

As alleged in the complaint, Meta Pixels can only match or "identify" an individual based upon the information that the website user is publicly displaying. (ECF 1, ¶ 37). Plaintiff makes no allegation that LASIK or the Meta Pixel can obtain information, such as a Facebook ID, that is not being publicly displayed by each webpage user. Every putative class member has a Facebook

ID that is publicly communicated (among other information) to all webpages visited by the users - whether there is a Meta Pixel on the webpage or not. Further, whether a website includes and uses a Meta Pixel is publicly available to everyone who visits the webpage at issue. (ECF ¶ 36, 62). Plaintiff takes issue with websites that publicly host a Meta Pixel on their webpage and the alleged ability by Facebook to use the Pixel to capture the users' ID then match it to the corresponding Facebook account.

Therefore, Plaintiff's complaint does not sufficiently allege that LASIK effectively intercepted or acquired any electronic communication. In fact, Plaintiff specifically concedes that LASIK did not intercept any communications by alleging that "third parties" were the interceptors of the communication. (ECF 1, ¶ 24). In another allegation of the complaint, Plaintiff admits that Facebook is the interceptor. (*Id.*, ¶¶ 33)("…thereby enabling Facebook to intercept and collect user activity on those platforms."). In reality, there was no interception at all because it is impossible for LASIK to intercept any communication given that Plaintiff was communicating directly with LASIK. Therefore, Plaintiff's complaint does not plead the necessary facts for a finding that LASIK violated the ECPA Section 2511(1)(a).

**B. Plaintiff Fails to Allege Facts Suggesting LASIK Intentionally Disclosed or Used the Contents of Any Intercepted Electronic Communication in Violation of the ECPA.**

Since Plaintiff cannot plausibly claim that LASIK intercepted any electronic communications, Plaintiff cannot rely on other subparagraphs of the ECPA to hold LASIK liable. Without first a finding that LASIK "intercepted" communications, Plaintiff cannot show that LASIK "intentionally disclosed" or "intentionally used" the contents of any intercepted electronic communications to support a violation of the ECPA. 18 U.S.C. § 2511(1)(c)-(d). The district court in *Valentine*, considered this possibility and affirmatively found that "[a] person cannot violate either the disclosure or use subparagraphs of the statute unless that person first knows or has reason

to know that the information was obtained through the interception of an electronic communication." *Valentine*, 2013 U.S. Dist. LEXIS 139071 at *18 quoting 18 U.S.C. § 2511(c), (d) (internal quotations omitted). The district court in *Valentine* made clear that "for a third-party (as opposed to the original interceptor) to be liable for disclosure or use, the third-party too must gain access to or acquire those contents." *Id.* at *19. Plaintiff has not alleged any facts to support a finding that LASIK acquired the contents of the alleged intercepted communication.

Should this Court interpret the requirements of the ECPA differently than the district court in *Valentine*, Plaintiff's complaint still fails to satisfy the intentional disclosure or use requirement. In the complaint, Plaintiff alleges that LASIK "assisted" Facebook in the interception. (ECF 1, ¶ 37). However, the plain language of the statue requires a showing that LASIK intentionally disclosed or used the alleged intercepted communication, not that LASIK "assisted" in the alleged interception. The complaint fails to allege any specific facts to support disclosure or use by LASIK. Instead, Plaintiff's allegations are conflicting and confusing. First, Plaintiff alleges that through the Meta Pixel, "[LASIK] shared its patients' online activity, including their sensitive and confidential information and search results, including information related to LASIK surgical procedures." (ECF 1, ¶ 39). Presumably this is Plaintiff's attempt at pleading disclosure. However, in another paragraph, the complaint alleges that "Facebook <u>caused</u> the browser to secretly duplicate the communication with [LASIK]…", which suggest that Facebook (the interceptor) disclosed or used the data itself. (*Id.*, ¶ 36) (emphasis added). Neither of these allegations is evidence of an intentional disclosure or use action by LASIK. *See Smith v. Facebook*, 2017 U.S. Dist. LEXIS 145031 *13 (N.D. Cal. May 9, 2017).

*Smith v. Facebook, Inc.* is instructive on the intent to disclose analysis. While the district court in *Smith* granted the defendants' motion to dismiss based on a lack of personal jurisdiction – the reasoning is still persuasive here. In *Smith*, the court was analyzing whether the Healthcare

Defendants purposely directed their activity at California by "sending users' sensitive medical communications to Facebook…" in order to satisfy the second prong of the *Calder* test. *Smith*, 2017 U.S. Dist. LEXIS 145031 at *12 citing *Calder v. Jones*, 465 U.S. 783 (1984). The district court found that while Facebook's tracking was "continuous and systematic" the district court distinguished Facebook's conduct from the Healthcare Defendants conduct stating, "the comprehensiveness of Facebook's tracking does not establish that the Healthcare Defendants 'send' information to Facebook…". *Id.* at *13. More importantly, the district court reasoned that "[t]he website's decision to embed the code allows that connection to occur, but the connection happens independently." *Id.* The *Smith* court correctly found "the Healthcare Defendants play no part in the exchange of data between Facebook and the Plaintiffs." *Id.* Just like the Healthcare Defendants in *Smith,* this Court should also find that LASIK played no part in the exchange of data between Plaintiff and Facebook here and therefore, there cannot be an intentional disclosure or use in violation of the ECPA. These Facebook users volunteered and consented to have Facebook information publicly displayed to every webpage they visit, whether the webpage has a Meta Pixel or not. Unless a Facebook ID or affiliation with Facebook is private health information, there is no theory that can tie these Facebook users' online activity pursuant to Facebook's terms of service.

### C. LASIK Cannot Be Liable for Violating the ECPA as a Party to the Alleged Intercepted Communication and the Complaint Fails to Establish that the Crime or Tort Exception Applies.

In addition to the failures detailed in the previous sections, Plaintiff's complaint also fails to state a claim for which relief may be granted under the ECPA because LASIK was a party to the alleged intercepted communication. The ECPA unambiguously states there is no violation of the law when a party to the alleged intercepted communication "has given prior consent to such interception…" 18 U.S.C. § 2511(2)(d). The statute goes on to explain that the exception does not apply if "such communication is intercepted for the purpose of committing any criminal or tortious

act in violation of the Constitution or laws of the United States or of any State." *Id.* Plaintiff's complaint fails to allege any facts that suggest that this exception should apply here, because the complaint does not plead sufficient facts that LASIK had the requisite intent of "committing any criminal or tortious act" in order for Plaintiff's ECPA count to survive the instant motion to dismiss.

1. LASIK was not a party to any exchange of information between users with a Facebook account and Facebook.

LASIK was a first-party recipient to the content of all communications Plaintiff voluntarily had with or displayed to LASIK on LASIK's website, making it impossible for there to be an interception under the ECPA as a matter of law.. Whatever communications took place between the Meta Pixel and Facebook after the Pixel identified a Facebook ID, LASIK was not a party to and is not able to access the contents of any such alleged intercept. Plaintiff concedes that it was the browser (and computer) which communicated with Facebook. (ECF 1, ¶¶ 36-37). There is no allegation that LASIK stood between the Meta Pixel and Facebook as an interceptor or recipient of the contents of any alleged intercept. Plaintiff, and every putative class member, had a pre-existing, first-party relationship with Facebook by virtue of the Terms and Conditions agreed to by the parties before visiting LASIK's webpage. (ECF 1, ¶ 62) ("Plaintiff seeks to represent a class defined as all persons in the United States who have a Facebook account and booked a consultation for LASIK surgery on the Website"). Whether Facebook acted improperly or exceeded the scope of permissible conduct is a question of interpretation of the Facebook Terms and Conditions – a dispute that does not involve LASIK. Without any allegation or possibility for LASIK to have intercepted communications between the Plaintiff and Facebook by virtue of the Meta Pixel, LASIK cannot be liable under the ECPA. *Valentine* 2013 U.S. Dist. LEXIS 139071 at *10.

2. None of Plaintiff's personal health information was acquired by Facebook in violation of HIPAA.

The information Plaintiff alleges was intercepted by Facebook is generalized and publicly available information and not the kind of PHI that HIPAA protects. Furthermore, the data was encrypted in a way that only Facebook could match the unique Facebook identification number with the specific profile. (ECF 1, ¶ 41). The complaint is devoid of any facts that could support the allegation that LASIK violated HIPAA by disclosing any private health information in order to rely on the crime/tort exception to the first party exclusion.

Courts analyzing this issue have made a point of distinguishing disclosure of public information from private health information on the internet. *See Smith*, 2017 U.S. Dist. LEXIS 145031 at *22-23; *Doe v. Upperline Health, Inc.,* 2024 U.S. Dist. LEXIS 221634 *5 (S.D. Ind. Sept. 24, 2024); *Hartley v. University of Chicago Medical Center*, 2023 U.S. Dist. LEXIS 200619 *2 (N.D. Ill. Nov. 8, 2023); *Nienaber v. Overlake Hospital Medical Center*, 2024 U.S. Dist. LEXIS 86167 *8 (W. D. Wash. May 13, 2024). The type of information that Plaintiff alleges here would fall under the classification of public information. Plaintiff alleges that the Meta Pixel (a Facebook product) shared with Facebook: (1) "a unique and persistent identifier that Facebook assigns to each user"; (2) that the "Book a Free Consultation" button was clicked; and (3) the "date, time, and location" of the appointment. (ECF 1, ¶¶ 36-37, 41). The complaint does not allege any specific health information that was captured by the Meta Pixel.

The information alleged to have been disclosed to Facebook was the equivalent of Plaintiff walking into one of the LASIK centers on a specific date and time at the same time people were walking down the street and able to see her walking into the center, which could not be considered private health information. These facts are synonymous with other cases in which courts have granted a motion to dismiss, like the district court in *Doe v. Upperline Health, Inc*. In that case, the plaintiff alleged that she used the medical provider's website to schedule appointments, find a podiatrist, and access the patient portal. *Doe*, 2024 U.S. Dist. LEXIS 221634 at *6. The court

distinguished information communicated on the Upperline public website versus the Upperline patient portal. *Id.* at *6-7. The court held that the allegations in the complaint were "factually insufficient" because the plaintiff "does not explain how she scheduled her appointments—whether she clicked the 'Schedule an Appointment' button on the Website itself or whether she did so in the patient portal—or what information she submitted that plausibly conveyed her Private Information." *Id.* at *7. Similarly, the district court in *Nienaber* found that scheduling appointments through a public website does not constitute private information. *Nienaber*, 2024 U.S. Dist. LEXIS 86167 at *11-12. Here, Plaintiff concedes that she scheduled an appointment using the publicly available LASIK website and not through any patient portal. There are no allegations in Plaintiff's complaint that specify any particular health conditions disclosed and therefore, the complaint does not state a claim that LASIK violated the ECPA.

## III. THE COMPLAINT FAILS TO SUPPORT THE STATE LAW NEGLIGENCE CLAIMS AGAINST LASIK IN COUNT II.

Count I and Count II of Plaintiff's complaint suffers from fatal pleading insufficiencies that warrants their dismissal. In Count II, Plaintiff pleads a state law negligence claim. "To state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of plaintiff's injuries." *Flores v. AON Corp.*, 2023 IL App. (1st) 230140 ¶ 23 citing *Cowper v. Nyberg*, 2015 IL 117811 ¶ 13. Plaintiff's complaint fails to plead sufficient facts to show that LASIK owed a duty, that LASIK breached any duty of care to Plaintiff and the putative class, and the complaint fails to plead facts to support a cognizable injury. Therefore, Count II of Plaintiff's complaint should also be dismissed.

### A. The Complaint Fails to Allege a Proper Duty of Care.

Not only is dismissal of Plaintiff's complaint is warranted based on failure to sufficiently allege that LASIK breached a duty or that LASIK caused Plaintiff to suffer any injury – but also

dismissal is appropriate because the complaint fails identify a duty owed by LASIK. First, Plaintiff alleges that LASIK "had a duty to exercise reasonable care in safeguarding, securing, and protecting [PII and PHI] from being compromised, misused, and disclosed to unauthorized parties." (ECF 1, ¶ 96). Second, Plaintiff alleges that LASIK, as a provider of health care – "had a special relationship with Plaintiff and Class Members…" (*Id.*, ¶ 97). Finally, the Complaint implicitly states that LASIK's alleged HIPAA obligations create a duty to Plaintiff. Based on the facts alleged in the complaint, neither of these conclusions support finding that LASIK owed a duty to Plaintiff or the class.

LASIK's duty regarding PII and PHI, if any, is defined by HIPAA – which it complied with. As a matter of law, there is no private cause of action or negligence per se based solely upon a HIPAA violation. *Walters v. Blue Cross Blue Shield of Tex., Inc., 2022 WL 902735 (N.D. Tex. 2022).* Without HIPAA as a basis for identifying a duty owed by LASIK, Plaintiffs may satisfy the duty element of a negligence claim by citation to another applicable "statute or common law." *Genesis Health Systems*, 2024 U.S. Dist. LEXIS 149581 at *27. Plaintiff has failed to allege any facts that LASIK had a duty based on a statute or common law, to safeguard information that Plaintiff consented to Facebook collecting. (ECF 1, ¶ 56). Instead, Plaintiff makes conclusory statements about a generalized duty. The complaint also does not allege any facts that it was foreseeable to LASIK that Plaintiff would suffer any injury from Facebook collecting Plaintiff's public online activity when Plaintiff assented to such collection and use when signing up for a Facebook account.

Not only does Plaintiff fail to allege facts supporting that LASIK owed a general duty in this case, but also Plaintiff mischaracterizes LASIK's alleged duty by pleading that LASIK and Plaintiff had a "special relationship." (ECF 1, ¶ 97). Plaintiff does not plead any additional facts to support a special relationship. In fact, the complaint supports the exact opposite. Plaintiff does

not allege that she was a current patient of LASIK in order to establish a physician-patient relationship that could arguably create a "special relationship." Plaintiff alleges only that she made an appointment and does not even allege that she attended that appointment.

"[T]he existence of a duty is a matter [of law] for the court to decide." *Vesley v. Armslist, LLC*, 762 F.3d 661, 665 (7th Cir. 2014) citing *Adams v. N. Ill. Gas Co.,* 211 Ill. 2d 32 (2004). One of the primary considerations in evaluating a duty argument, is to determine "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* quoting *Marshall v. Burger King Co.*, 222 Ill. 2d 422 (2006). Here, Plaintiff has failed to plead any facts that would support a common law duty based on a special relationship between LASIK and Plaintiff or the putative class. Without facts to establish a duty based on statue or common law, Plaintiff cannot maintain the first required element of her negligence claims against LASIK – that LASIK owed Plaintiff or the putative class a duty.

**B. Plaintiff's Complaint Fails to Allege Facts That LASIK Breached Any Duty.**

LASIK does not concede that it owed a duty of care to Plaintiff or the putative class, but even assuming *arguendo* that LASIK owed a statutory or common law duty – the complaint fails to support the allegations that LASIK breached the alleged duty. Plaintiff alleges that LASIK had a duty to "prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII and PHI." (ECF 1, ¶ 101). As discussed above, the complaint fails to allege any specific facts that LASIK breached a duty by disclosing Plaintiff's or the putative class member's protected private information in violation of HIPAA. LASIK did no disseminating; Facebook performed every communication function alleged in the Complaint. Instead, the complaint pleads facts that suggest Facebook accessed public information about the Plaintiff's web browsing history. Even if this Court were to find that the complaint sufficiently alleged that the data Facebook accessed could

be something more than public information – Plaintiff's complaint does not allege any facts that LASIK itself disclosed this information to Facebook.

1. The complaint does not allege any facts that Plaintiff's PHI was disclosed.

HIPAA defines what constitutes "health information" for the purposes of the statute. Under HIPAA "health information" "relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual." 42 U.S.C. § 1320d(4). Nothing alleged in the complaint suggests that any of Plaintiff's health information was accessed by Facebook via the Meta Pixel. Plaintiff's disclosure of their unique encrypted Facebook ID to Facebook combined with an alleged confirmation of a scheduled appointment with the date, time, and location of the specific LASIK center cannot constitute health information because it does not represent "the past, present, or future physical or mental health or condition of an individual." (ECF 1, ¶¶ 36-37)' *c.f. Smith v. Loyola University Medical Center*, 2024 U.S. Dist. LEXIS 119995 *17 (N.D. Ill. July 9, 2024) (denying the motion to dismiss finding that plaintiff sufficiently alleged that Loyola had access to "specific medical providers, specific medical conditions and treatments, and other sensitive health information…").

The allegations in the complaint do not suggest that Plaintiff or any of the class members were actual patients of LASIK as opposed to just consumers interested in LASIK's products or services. Plaintiff does not allege that the appointment made on LASIK's website that was allegedly tracked by Facebook was even attended. As discussed above, there is no difference between seeing a patient walk into a LASIK clinic and Meta's alleged transmission of a Facebook ID with an appointment date, time, and location. The cases in which courts have found facts sufficient to suggest PHI was accessed by Facebook typically involve direct communications with current or former patients in a secure part of the website, like MyChart. *See Smith*, 2024 U.S. Dist.

LEXIS 119995 at *18 (finding plaintiffs plausibly alleged disclosure of "personal health conditions and treatments"); *Kurowski v. Rush Systems for Health*, 2023 U.S. Dist. LEXIS 219895 *7-8 (N.D. Ill. Dec. 11, 2023) (finding allegations that Rush transmitted the name, location, and specialty of the plaintiff's personal physician sufficient allegations of PHI); *Castillo v, Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197 *21-22 (W.D. Wash. Nov. 14, 2024) (holding that the plaintiffs plausibly alleged a HIPAA violation in stating that Costco disclosed "patient status, prescription information (including specific drugs and pricing information); immunization information; treatments…"). These cases are all distinguishable from the facts Plaintiff pleads here. The actions pled in this complaint are akin to making an internet search about specific medical conditions and do not rise to the level of PHI. *See Nienaber*, 2024 U.S. Dist. LEXIS 86167 at *11-12.

When looking at the screenshot of the communication allegedly captured by Facebook, it is clear that no personal health information was disclosed. In reading through the "URL called" data, the most that can be garnered from that information is that the "SubscribedButtonClicked," an appointment confirmation was sent, and that the center code was Schaumburg. (ECF 1, ¶ 36). This type of information is public data and does not specifically relate to the Plaintiff's past, present, or future physical condition or the provision of health care. Plaintiff does not allege that any specific medical issues were inputted into the LASIK system when making a consultation appointment. Nor does the URL screenshot suggest that any such information was captured and transmitted by the Meta Pixel to Facebook. *See Smith v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 145031 at * 23 ("[n]othing about the URLs, or the content of the pages located at those URLs, related to the past, present, or future physical or mental health or condition of an individual.") (emphasis in original). Plaintiff's complaint fails to allege any facts to support a finding that LASIK breached any duty owed by disclosing personal protected health information in violation

of HIPAA.

**C. Plaintiff Does Not Plead Facts to Support an Injury Caused by LASIK.**

Plaintiff's complaint makes several concessions that prohibit a finding that LASIK proximately caused Plaintiff or the putative class to suffer any injury. These admissions establish that Plaintiff and the putative class consented to providing certain information to Facebook and consented to certain data from third parties being shared with Facebook. Without any allegation that putative class member's Facebook ID was surreptitiously acquired, it was information that was voluntarily and publicly displayed to every single webpage visited by Plaintiff. Therefore, Plaintiff fails to plead sufficient facts that LASIK caused Plaintiff or the class to suffer any injury.

Plaintiff alleges when people sign up for a Facebook account, the user provides "their first and last name, along with their birthday and gender." (ECF 1, ¶ 29). The complaint also alleges that when a user, like Plaintiff, visits the LASIK public website Facebook causes the user's "browser to secretly duplicate the communication with [LASIK], transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity." (*Id*. at ¶ 36). Additionally, as Plaintiff alleges, Facebook takes the data and assimilates the data into "datasets like Core Audiences and Custom Audiences for targeted advertising purposes." (*Id.* at ¶38). Within the information that Facebook allegedly received through the Meta Pixel was a unique Facebook ID number. (*Id.* at ¶ 41). Plaintiff then alleges that Facebook, not LASIK, uses cookies to link the Facebook ID to corresponding Facebook profiles. (*Id.* at ¶ 51). When users sign up for a Facebook account, the user will agree to the Terms of Service, the Cookies Policy, and the Privacy Policy. (*Id.* at ¶ 54). As a part of those policies, Plaintiff was told that certain data can be shared with third parties that Facebook works with. (*Id.* at ¶ 56). Plaintiff also alleges that Facebook acknowledges and informs users that Facebook collects "data with special protections to personalize ads" when users choose to provide access to

certain sensitive information. (*Id.* at ¶ 57).

Plaintiff and every putative class member had a pre-existing, voluntary relationship with Facebook that was dictated by Facebook's policies before anyone visited LASIK's webpage. Plaintiff cannot plausibly allege that LASIK caused her to suffer any cognizable injury when she, as a Facebook user, consented to certain information being shared with Facebook by third parties. What Facebook did after it noticed and then matched Plaintiff's publicly displayed Facebook ID to its database is between Plaintiff and Facebook. The allegation that Plaintiff and the putative class suffered "fear, anxiety, and worry about the status of their PII and PHI…" is not supported by the admissions made in the complaint. (*Id.* at ¶ 109). "No facts are alleged that would explain how receiving targeted advertisements from Facebook…would plausibly cause any of the Plaintiffs to suffer these damages." *T.D. v. Piedmont Healthcare, Inc.*, 2024 U.S. Dist. LEXIS 154229 *11 (N.D. Ga. Aug. 28, 2024). In *Piedmont*, the plaintiffs alleged that the healthcare provider wrongfully disclosed their "confidential health information to Facebook through the installation of several data collection and tracking tools on Piedmont's website." *Id.* at *2. The court found that the plaintiffs damages theories were "untenable" reasoning that "[t]he Plaintiffs received targeted advertisements because they are Facebook users and have Facebook IDs." *Id.* at *11. The same is true here.

Plaintiff's claimed damages are untenable in this case for the same reasons that they were untenable to the court in *Piedmont.* Plaintiff acknowledges familiarity with Facebook policies and its data sharing. Which means that Plaintiff was aware and consented to such third-party sharing arrangements when signing up for Facebook. Additionally, Plaintiff fails to allege any specific facts as to why she was worried about the status of her alleged PII and PHI. Plaintiff's complaint does not allege any specific facts as to what private health information was potentially compromised or why this alleged compromise would result in fear, anxiety, and worry. Therefore,

Plaintiff's complaint fails to properly allege that her injuries were proximately caused by LASIK.

**CONCLUSION**

This class action complaint should be dismissed. First, the complaint cannot support a finding that Plaintiff or the putative class have satisfied the standing requirement of tracing the alleged injuries to conduct of LASIK. Therefore, dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Second, the complaint does not support a cause of action against LASIK under the ECPA because LASIK did not intercept any communications. Nor does the complaint show that LASIK disclosed or used any alleged intercepted communication in any way. Finally, the complaint fails to support the state law negligence claims because there are not enough facts to support all of the necessary elements of a negligence claim.

WHEREFORE, Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, respectfully requests this Court dismiss the class action complaint and all claims in their entirety with prejudice and for any other relief this Court deems just.

Respectfully submitted,

CONNOLLY KRAUSE LLC

By: /s/ *Corinne M. Cundiff*
One of the Attorneys for Defendant

Jeffrey J. Escher #6289438
Corinne M. Cundiff #6326784
CONNOLLY KRAUSE LLC
500 West Madison Street
Suite 3900
Chicago, Illinois 60661-2593
(312) 253-6200
jescher@cktrials.com
ccundiff@cktrials.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

/s/ Corinne M. Cundiff