**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ARTISHA CARROLL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LCA-VISION, Inc., d/b/a LASIKPLUS,

Defendant.

Case No. 24-cv-12691

Hon. John Robert Blakey

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. PLAINTIFF WAS INJURED BY DEFENDANT'S CONDUCT ........ 4

II. PLAINTIFF STATES A CLAIM UNDER THE WIRETAP ACT ........ 5

A. Plaintiff's Communications Were Intercepted Through Defendant's Use Of The Meta Pixel ........ 5

B. Defendant Intentionally Disclosed Plaintiff's Protected Information ........ 7

C. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose 9

III. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE ........ 12

A. Defendant Had A Duty Of Care To Not Disclose Plaintiff's Phi ........ 12

B. Defendant Breached Its Duty Of Care ........ 15

C. Defendant Caused Plaintiff's Injury ........ 16

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 3, 7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ........ 4

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) ........ 4

*Bogenberger v. Pi Kappa Alpha Corp., Inc.*,
2018 IL 120951 (2018) ........ 13

*Doe v. Genesis Health System*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ........ 5, 14

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ........ 10

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140 (2023) ........ 13

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 18

*Gibson v. City of Chi.*,
910 F.2d 1510 (7th Cir. 1990) ........ 3

*Grant v. South Roxana Dad's Club*,
381 Ill.App.3d 665 (2008) ........ 13

*Hartley v. University of Chicago Medical Center*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ........ 10

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ........ 14

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) ........ 10

*In re Meta Pixel Healthcare Litig.,*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 10

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)............................................................... 10

*Krywin v. Chicago Transit Authority*,
238 Ill.2d 215 (2010) ............................................................................................... 13

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ................................................... passim

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) ........................................................................................ 3

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)........................................................................ 10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)............................................................. 11, 16

*O'Brien v. Village of Lincolnshire*,
354 F.Supp.3d 911 (N.D. Ill. Dec. 7, 2018).................................................................. 3

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. May 9, 2024) ........................................................ 5, 6, 12

*Smith v. Facebook*,
262 F.Supp.3d 943 (N.D. Cal. May 9, 2017)............................................................. 8, 12

*Smith v. Loyola University Medical Center*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)............................................................ passim

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)............................................................ 11, 16

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ............................................................ passim

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................................... 9

*United States v. Szymuszkiewics*,
622 F.3d 701 (7th Cir. 2010) ........................................................................................ 8

*Wittmeyer v. Heartland Alliance for Human Needs & Rights*,
2024 WL 182211 (N.D. Ill. Jan. 17, 2024)................................................................... 14

**STATUTES**

18 U.S.C. § 2510(4) ......................................................................................................... 5

18 U.S.C. § 2511(1)(a)........................................................................................................ 6

18 U.S.C. § 2511(2)(d) ........................................................................................................ 9

42 U.S.C. § 1320(d)(4) ...................................................................................................... 15

## INTRODUCTION

Defendant LCA-Vision, Inc. d/b/a LasikPlus ("Defendant") operates a national chain of medical clinics that specialize in providing LASIK surgery. *See* Class Action Complaint (ECF No. 1) ("Compl.") ¶ 10. Defendant encourages individuals interested in LASIK surgery to book appointments through its website, lasikplus.com (the "Website"). *Id.* Unbeknownst to consumers, Defendant discloses information related to their medical appointment to Facebook, the world's largest social media company. *See id.* Figure 1. Such information is not shared for the purpose of providing treatment, but rather, solely for the purpose of targeted advertising—allowing Facebook to monetize the private information unlawfully disclosed to it. Facebook does not only utilize this information for Defendant's benefit, but also its own. Defendant discloses this information to Facebook without consumers' consent, despite the fact that this information is protected by federal law.

As a medical provider, Defendant has a duty to protect the health information it receives. The HIPAA Privacy Rule defines individually identifiable health information ("IIHI") as "*any information*…that—(A) is created *or received by a health care provider* ... (B) relates to the past, present, or future physical or mental health or condition of an individual, *the provision of health care to an individual*…and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." *Id.* ¶ 89 (emphasis added). Protected health information ("PHI") consists of all IIHI collected on a regulated entities website. *Id.* ¶ 26. This is true regardless of whether the individual has a preexisting relationship with the regulated entity. *Id.*

Like all other putative class members, Plaintiff scheduled a consultation for LASIK surgery on Defendant's Website. *Id.* ¶¶ 6-9. During this time, Plaintiff maintained an active

social media account with Facebook. *Id.* Unbeknownst to Plaintiff, and without her consent, information related to her medical appointment was intercepted through the Facebook Tracking Pixel, a tracking code Defendant embedded on its Website. The information disclosed to Facebook included Plaintiff's Facebook ID, as well as PHI related to her medical consultation for LASIK eye surgery. *Id*. ¶¶ 7, 37. Defendant's actions demonstrate a blatant disregard for its duties as a medical provider as well as its patients' privacy interests.

Defendant's principal argument in support of dismissal of Plaintiff's claims is that Plaintiff consented to Meta's collection of her PHI. Notably, Defendant fails to cite *any* legal authority supporting the contention that consumers agree to have their PHI collected by Facebook simply by creating a Facebook account. That is for good reason. While Defendant cherry-picks language from Meta's privacy policies that concern the general collection of non-protected information, it tellingly omits language from these same policies regarding the types of information that Meta claims to not collect. *See id.* ¶ 55 ("The Terms of Service then prohibit anyone from using Facebook's Products in a manner that is 'unlawful, misleading, or fraudulent.'"); *id.* ¶ 57 ("We require each of these partners to have lawful rights to collect, use and share your data before providing any data to us."); *id.* ¶ 59 ("Facebook does not want websites or apps sending us sensitive information about people. Sensitive information includes…any information defined as sensitive under applicable laws, regulations and applicable industry standards."). Despite these express limitations, Defendant intentionally disclosed Plaintiff's PHI without her knowledge, consent or authorization to Meta for targeted advertising. Both Defendant's obligations as a healthcare provider and Facebook's Terms of Use for its product (i.e. the Facebook Tracking Pixel) prohibited Defendant from disclosing PHI without authorization. Defendant did so anyway. Courts in this district routinely recognize that this

conduct is unlawful. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) ("Courts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA."); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("[Defendant] placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA]."); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (same); *Smith v. Loyola University Medical Center*, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (same). This case is no different.

## LEGAL STANDARD

"Under both rules 12(b)(1) and 12(b)(6), this Court must construe the [allegations in the complaint] in the light most favorable to Plaintiff[], accept as true all well-pleaded facts, and draw reasonable inferences in [her] favor." *O'Brien v. Village of Lincolnshire*, 354 F.Supp.3d 911, 912 (N.D. Ill. Dec. 7, 2018) (Blakey, J.).

A motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge. A facial challenge "requires th[e] Court to look only to the complaint to determine if Plaintiff[] ha[s] sufficiently alleged a basis for subject matter jurisdiction." *Id.* at 913. Factual attacks allow the Court to "look beyond the complaint" to "external facts to call th[e] Court's jurisdiction into question." *Id.*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts to "state a claim for relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I. PLAINTIFF WAS INJURED BY DEFENDANT'S CONDUCT

Defendant argues that Plaintiff fails to establish Article III standing for two reasons. First, Defendant argues that Plaintiff has not suffered any injury related to the conduct at issue because "she consented to be tracked by Facebook across the internet." MTD at 6. Next, Defendant argues that Plaintiff "cannot establish how [its] hosting of a Meta Pixel caused her…any injury traceable to [Defendant's] conduct." *Id.* Defendant is wrong on both counts.

Meta represents to its users, including Plaintiff, that it only tracks internet activity that it has a "lawful right[] to collect." Compl. ¶ 57. Meta further represents that it "do[es] not use sensitive personal data for ad targeting." *Id.* ¶ 59 (internal quotations omitted). This "sensitive data" includes "any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." *Id.* Nonetheless, through the Meta Pixel, Defendant disclosed Plaintiff's medical appointment for a LASIK surgery consultation to Meta. *Id.* ¶¶ 7-8, 36. This information constitutes PHI and is protected from disclosure under HIPAA. *Id.* ¶¶ 18-19. Therefore, Meta had no lawful basis to obtain such information and did so in violation of its own policies. Similarly, as a healthcare provider, Defendant had no lawful basis to share its patients PHI without their consent. Meta and Defendant both monetized this information for targeted advertising purposes. *Id.* ¶¶ 8, 38, 85.

Defendant's remaining argument mischaracterizes Plaintiff's claims. Defendant did not merely *host* code for the Meta Pixel on its Website, as it claims. Instead, "Defendant *embedded*

this tracking technology on its Website for advertising purposes." *Id.* ¶ 10 (emphasis added); *see also id.* ¶ 84 ("*Defendant* intercepted Plaintiff's and Class Member's electronic communications through the [Meta] Pixel, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' PII and PHI to third parties.") (emphasis added). Courts routinely find similar allegations to be sufficient to establish Article III standing. *See, e.g., Smith*, 2024 WL 3338941, at *4 ("Here, the plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information that, at this stage, is sufficient to confer standing[.]"). Defendant's own authority is in accord. *Doe v. Genesis Health System*, 2024 WL 3890164, at *6 (C.D. Ill. Aug. 21, 2024) (holding that the plaintiff established standing for their claim under the Wiretap Act where "in addition to metadata, [defendant] disclosed class members' PII and PHI and that this could be linked to their Facebook IDs").

## II. PLAINTIFF STATES A CLAIM UNDER THE WIRETAP ACT

### A. Plaintiff's Communications Were Intercepted Through Defendant's Use of the Meta Pixel

Defendant argues that Plaintiff's claim under the Wiretap Act should be dismissed because Plaintiff "does not sufficiently allege that [Defendant] effectively intercepted or acquired any electronic communication." MTD at 8. That is wrong.

The Wiretap Act defines an "interception" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Courts have found that a plaintiff satisfies the "interception" requirement of the Wiretap Act by alleging that a defendant "intentionally utilized tracking technologies to collect, use, and distribute Plaintiffs' sensitive information to third parties like Facebook." *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. May 9, 2024).

Here, Plaintiff makes countless allegations regarding Defendant's use of the Meta Pixel to intercept confidential communications. *See* Compl. ¶ 4 ("Defendant aided, employed, agreed, and conspired with Facebook to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information."); *id.* ¶ 83 ("By utilizing and embedding the Facebook Tracking Pixel on its Website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a)."); ¶ 84 ("Specifically, Defendant intercepted Plaintiff's and Class Members' electronic communications through the Facebook Tracking Pixel, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' PII and PHI to third parties, such as Facebook."). This information included Plaintiff's Facebook ID, as well as protected information related to her medical consultation for LASIK eye surgery. *Id.* ¶¶ 7, 37. Nothing more is required to establish that an "interception" occurred under the Wiretap Act. *See Walgreen Co.*, 733 F.Supp.3d at 902.

Defendant's remaining arguments have no basis in law or fact. For example, whether a website hosts code for the Meta Pixel is not disclosed to consumers. Indeed, Plaintiff specifically alleges that these interceptions occurred "without her knowledge, consent, or written authorization." Compl. ¶ 8. Additionally, Defendant attempts to invoke the "party exemption," arguing that "there was no interception at all" because Defendant was a party to the communication. *Id.* at 8. However, this exemption does not apply, as the interceptions at issue were done for the purpose of committing a criminal or tortious act, namely violating HIPAA. *Walgreen Co.*, 733 F.Supp.3d at 901. Defendant fails to provide *any* legal authority concerning the tracking technology at issue here in support of its contentions.

### B. Defendant Intentionally Disclosed Plaintiff's Protected Information

Defendant argues that Plaintiff's claim under the Wiretap Act should be dismissed because Plaintiff does not allege that Defendant committed "an intentional disclosure." MTD at 9. That is wrong.

As courts in this Circuit have explained:

> Under the Wiretap Act, any person who—(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication commits an offense and may be subject to civil penalty. This is also true for any person who intentionally discloses or uses, or endeavors to disclose or use, the contents of an intercepted communication.

*Kurowski*, 2023 WL 8544084, at *2 (internal citations omitted). In other words, companies, like Defendant, violate the Wiretap Act when they disclose their patients' confidential communications through tracking technologies like the Meta Pixel. *See id; see also Stein*, 2025 WL 580556, at *4 ("Courts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA."); *Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 ("[Defendant] placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA].").

Here, Defendant not only intended to intercept its patients' confidential information through the Meta Pixel, but it also intended to disclose this information to Meta as well. *See* Compl. ¶ 39 ("Through the Facebook Tracking Pixel, Defendant shared its patients' online activity, including their sensitive and confidential information"); *id.* ¶ 40 ("Defendant transmitted information relating to the specific patients' consultation to Facebook via the Facebook Tracking Pixel."); *id.* ¶ 52 ("Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose her confidential and sensitive PII….Defendant nonetheless

knowingly disclosed to Facebook her sensitive and confidential PII."). Nothing more is required to support allegations of "disclosure" under the Wiretap Act. *See Stein*, 2025 WL 580556, at *4.

The authority relied upon by Defendant is misplaced. For example, Defendant relies on *Valentine* in support of its contention that "Plaintiff has not alleged any facts to support a finding that [Defendant] acquired the contents of the alleged intercepted communication." MTD at 9. That is wrong, as Plaintiff alleges that "Facebook caused the browser to *secretly duplicate the communication with Defendant*, transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity." Compl. ¶ 36 (emphasis added). Such transmissions are "concurrent with the communications with the host website." *Id.* ¶ 35. *See United States v. Szymuszkiewics*, 622 F.3d 701, 703-04 (7th Cir. 2010) (holding unlawful interception occurred where email communications were copied at the server and redirected to the defendant). Here, Defendant acquired the contents of the alleged interceptions because it was able to utilize the information it intercepted for targeted advertising purposes. Compl. ¶¶ 32, 38, 92. Defendant's reliance on *Smith* is similarly misguided. *Smith* was silent as to whether the conduct of the "Healthcare Defendants" supported a claim under the Wiretap Act. Instead, the court limited its analysis to determining whether their conduct was sufficient for the court to exercise personal jurisdiction. *Smith v. Facebook*, 262 F.Supp.3d 943, 950 (N.D. Cal. May 9, 2017). This provides no guidance for this Court's analysis. In any event, it would contradict all relevant and more recent authority from this district. *See Kurowski*, 2023 8544084, at *2; *Stein*, 2025 WL 580556, at *4; *Aspen Dental*, 2024 WL 4119153, at *3. Finally, Defendant's conclusory assertion that Plaintiff "volunteered and consented to have Facebook information publicly displayed to every webpage they visit," has no basis in fact and directly contradicts the well-pled allegations of the Complaint. *See* ¶¶ 8, 52, 53, 61.

### C. Defendant Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose

Defendant argues that Plaintiff's claim under the Wiretap Act fails because Defendant "was a party to the alleged intercepted communication." MTD at 10. However, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. Compl. ¶¶ 8, 89-93. Specifically, Plaintiff alleges that Defendant disclosed information to Meta related to her consultation for LASIK eye surgery. *Id.* ¶¶ 6-7. Such interceptions and disclosures were nearly identical to those shown in Figure 1 of the complaint. Multiple federal courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Kurowski*, 2023 WL 8544084, at *3 (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *Stein*, 2025 WL 580556, at *5 ("Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA.") (collecting cases); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL

1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Meta Pixel I") ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws"). Moreover, by disclosing Plaintiff's IIHI without authorization, Defendant also violated Meta's terms. *See* Compl. ¶ 55 ("Facebook's Terms of Service…prohibit anyone from using Facebook's Products [i.e. the Meta Pixel] in a manner that is 'unlawful, misleading, discriminatory, or fraudulent.'").

The authority relied upon by Defendant is distinguishable, as those cases either contained insufficient factual allegations (*See Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) ("Plaintiff fails to identify how she communicated her confidential medical information with her doctor on [defendant's] public website….Her other allegations relating to the Website are factually insufficient. She does not explain how she scheduled her appointments….Plaintiff's allegation that she used the Website to search for a podiatrist is similarly unavailing. There is nothing about that browsing activity that relates specifically to *her* health or relationship with [defendant]."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) ("Here…there is an absolute dearth of information specific to Plaintiff as what was disclosed to Facebook that would plausibly be in

violation of HIPAA.")) or failed to allege the disclosure of a patient's medical appointment. *See Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) ("Plaintiff provides no information as to whether she used Defendant's Public Website to schedule an appointment"). That is not the case here. As conceded by Defendant, courts addressing the crime-tort exception have made clear distinctions between non-actionable public web browsing versus disclosures that reveal a patient's PHI. Again, "HIPAA defines IIHI as…information…[that] is created or received by a health care provider…[that] relates to…the provision of health care to an individual…[and] identifies the individual…[or] there is a reasonable basis to believe that the information can be used to identify the individual." Compl. ¶ 89. Scheduling a medical consultation for LASIK eye surgery clearly satisfies the definition of PHI, as it relates to "the provision of health care to an individual." *Id.* Whether the appointment was scheduled on Defendant's public website or though a patient portal is of no consequence because the scheduling of medical appointments still qualifies as PHI. Defendant's own authority supports this position. *See Nienaber*, 733 F.Supp.3d at 1083 ("Disclosure through publicly available webpages that, plausibly relate to the provision of healthcare of connect a particular user to a particular healthcare provider may be actionable."); *see also St. Aubin v. Carbon Health Technologies, Inc.,* 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (Upholding wiretap claim where "the URLs transmitted to Facebook and Google included…the reason for her medical appointment").

Defendant's analogy falls flat. Whether private individuals notice someone walk into one of Defendant's medical facilities is wholly different from whether Defendant has a legal duty to protect the PHI of its patients.

Defendant's remaining argument that the information communicated to Meta is "encrypted" is of no consequence. MTD at 12. As Plaintiff alleges, and as other courts have noted, anyone who receives a user's Facebook ID can easily use it to identify that user's Facebook account. *See* Compl. ¶ 41 ("A Facebook ID is a unique and persistent identifier that Facebook assigns to each user. With it, any ordinary person can look up the user's Facebook profile and name."); *Walgreen Co.*, 733 F.Supp.3d at 889 ("[T]he[] private health information was rendered personally identifiable due to the [Facebook Tracking] Pixel's operation with Facebook cookies, which, working together, caused Plaintiffs' product selections to be transmitted via the [Facebook Tracking] Pixel alongside their unique Facebook ID. When Plaintiffs' browsing and shopping activities were connected to their Facebook IDs, that information became personally identifiable."). In any event, by disclosing its patients' PHI to Meta, Defendant violated HIPAA regardless of whether that communication was encrypted or unencrypted.

## III. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE

### A. Defendant Had a Duty of Care to Not Disclose Plaintiff's PHI

Defendant argues that, as a medical provider, it does not owe a duty of care to protect the PHI of its patients, including Plaintiff and members of the putative class. MTD at 14. That is wrong. Ignoring Plaintiff's well-plead allegations, Defendant argues that Plaintiff's negligence claim fails because the physician-patient relationship does not establish a common law duty of care under Illinois law. *Id.* However, the negligence claim pled in Plaintiff's Complaint identifies additional grounds, aside from HIPAA, giving rise to a duty for Defendant to keep Plaintiff's PHI confidential, which plainly governs Defendant's collection of sensitive, private health information from the users of its Website.

"The existence of a common law duty is a question of law and is shaped by public policy considerations." *Grant v. South Roxana Dad's Club*, 381 Ill.App.3d 665, 669 (2008). "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, 226 (2010). When determining whether there is a duty of care under the common law in Illinois, courts look at "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, 242 N.E.3d 340, 354 (citing *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 46, 423 Ill. Dec. 21, 104 N.E.3d 1110).

Plaintiff alleges that Defendant owed a common law duty to prevent the "loss or unauthorized dissemination of Plaintiff's and Class Members' [PHI]." Compl. ¶ 101. It is foreseeable that the failure to prevent the unauthorized disclosure of Plaintiff's PHI can lead to several types of serious injury. Compl. ¶ 100. Further, the likelihood of these injuries arising from an unauthorized disclosure is palpable, as demonstrated by the extensive, detailed and explicit HIPAA regulations that are specifically designed to prevent such injuries. The burden for Defendant to maintain the confidentiality of its patients' PHI is not an issue, given that Defendant is already required to comply with state and federal regulations that prohibit unauthorized disclosures. Courts in this district recognize a common law duty to maintain reasonable security measures to prevent the unauthorized disclosure of private information, which includes medical information. *See, e.g., Stein*, 2025 WL 580556, at *9 ("The complaint alleges that [defendant] collected Plaintiffs' sensitive medical information, and then

disseminated that information to a third party without their consent. The collection of private health data is enough to give rise to a duty of care."); *Wittmeyer v. Heartland Alliance for Human Needs & Rights*, 2024 WL 182211, *2 (N.D. Ill. Jan. 17, 2024) (recognizing that a duty to protect personal information exists under Illinois common law); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (similar).

Defendant also had a statutory duty to protect and safeguard Plaintiff's PHI. *See Loyola University Medical Center*, 2024 WL 3338941, *7 ("As this Court and other courts have discussed, however, the Illinois legislature has since created a duty that requires data collectors to maintain reasonable security measures under the Information Protection Act.") (internal citations omitted). Here, Plaintiff alleges that "Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, misused, and disclosed to third parties." Compl. ¶ 96. Nothing more is required. *See Loyola University Medical Center*, 2024 WL 3338941, *7 ("The complaint alleges that [defendant] collected the plaintiffs' nonpublic personal information and disseminated that information to unauthorized third parties. Thus, the complaint plausibly alleges a duty to prevent the disclosure of their private health information.").

Defendant's reliance on *Genesis Health System* is misplaced, due to the fact that there was "an express contract between the parties," which "generally bars tort liability" under the *Moorman* doctrine. 2024 WL 3890164, at *11-12 (C.D. Ill. Aug. 21, 2024). Defendant identifies no such contract between the parties here.

Finally, Defendant's argument that "Plaintiff alleges only that she made an appointment and does not even allege that she attended that appointment" is a red herring. MTD at 15. As

alleged in Plaintiff's Complaint, "[a]ll such [IIHI] collected on a regulated entity's website or mobile app generally is PHI, *even if the individual does not have an existing relationship with the regulated entity*[.]" ¶ 26 (emphasis added). By collecting PHI on its Website, Defendant had a duty to not unlawfully disclose such protected information to third parties without consent.

### B. Defendant Breached Its Duty of Care

Defendant argues that it did not breach any duty to Plaintiff because it did not disclose any "personal health data" to Meta. MTD at 17. That is wrong.

Defendant concedes that HIPAA defines "health information" as information that "relates to the past, present, or future physical or mental health or condition of an individual, ***the provision of health care to an individual***, or the past, present, or future payment for the provision of health care to an individual." MTD at 16 (quoting 42 U.S.C. § 1320(d)(4)) (emphasis added). Yet, inexplicably, Defendant narrows this definition for the purpose of its argument and says Plaintiff cannot allege a breach of any duty because it did not disclose information related to "the past, present, or future physical or mental health or condition of an individual."[1] *Id.* That is improper.

The URL provided in Figure 1 of the Complaint establishes that the data being disclosed to Meta included "a confirmation that a patient is scheduling a consultation for LASIK surgery, including the date, time, and location of the consultation," Compl. ¶ 37. Such information clearly relates to the provision of health care to an individual. 42 U.S.C. § 1320(d)(4). Defendant fails to cite *any* authority finding that a medical appointment does not constitute PHI. Indeed, the authority relied upon by Defendant suggests the opposite. *See Nienaber*, 733 F.Supp.3d at 1083 ("Disclosure through publicly available webpages that, plausibly relate to the

---

[1] Plaintiff still refutes this point, as the disclosure of a LASIK eye surgery consultation inherently *does* relate to a physical health condition affecting eyesight, *e.g.*, astigmatism.

provision of healthcare of connect a particular user to a particular healthcare provider may be actionable."); *see also St. Aubin v. Carbon Health Technologies, Inc.,* 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (Upholding wiretap claim where "the URLs transmitted to Facebook and Google included…the reason for her medical appointment"). Nor is this information mere "public data," as Defendant contends. MTD at 17. When patients make appointments with healthcare providers, they expect that "their information will be held in confidence and not shared with third parties." Compl. ¶ 3. Defendant breached its duty to safeguard this information by disclosing it to Meta. *Id.* ¶¶ 9, 107.

**C. Defendant Caused Plaintiff's Injury**

Defendant argues that "Plaintiff fails to plead sufficient facts that [Defendant] caused Plaintiff or the class to suffer any injury." MTD at 18. This argument relies entirely on misstatements of both law and fact. It should not be taken seriously.

Meta cannot track its users on websites that do not contain its software code. As alleged by Plaintiff, "Defendant embedded a software code known as the Facebook Tracking Pixel on its Website." Compl. ¶ 10. In other words, Meta cannot collect *any* information from its users without companies, like Defendant, installing their software code. While Defendant cites several of Meta's data collection policies, it omits several. For example, Meta's "Terms of Service then prohibit anyone from using Facebook's Products in a manner that is unlawful, misleading, discriminatory or fraudulent." *Id.* ¶ 55. While Meta users, like Plaintiff, consent to be tracked by Meta in a *limited* manner, they do not agree to the tracking of *any* and *all* of their online activities. *Id.* ¶ 53 ("Facebook likewise never received consent to intercept sensitive, protected information. In fact, Facebook expressly warrants the opposite, promising to shield that information from disclosure."). Given these privacy concerns, Healthcare companies like Defendant are aware that they are only permitted to use such tracking tools in a limited manner.

*See id.* ¶ 22 ("Health care organizations regulated under HIPAA, like Defendant, may use third-party tracking tools, such as the Facebook Tracking Pixel, *in a limited way* to perform analysis on data key to operations. They are not permitted, however, to use these tools in a way that may expose patients' PHI to vendors."). Despite these requirements, Defendant nonetheless breached its duty to not disclose Plaintiff's PHI, which "caused Plaintiff and Class Members to, inter alia, have their data shared with third parties without their authorization or consent, receive unwanted advertisements that reveal seeking treatment for specific medical conditions, fear, anxiety and worry about the status of their PII and PHI, diminution in the value of their personal data for which there is a tangible value, and/or a loss of control over their PII and PHI, all of which can constitute actionable actual damages." *Id.* ¶ 109. Courts within this district find substantially similar allegations to be sufficient. *See Loyola University Medical Center*, 2024 WL 3338941, *7 ("Allegations of emotional harm, such as these, are sufficient to state a negligence claim under Illinois law, including in the data privacy context."). As such, Defendant's reliance on out-of-district authority is not persuasive.[2]

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety. Alternatively, if the motion is granted in any respect, Plaintiff should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.").

Dated: March 11, 2025 Respectfully submitted,

By: */s/ Stephen A. Beck*

[2] The *Piedmont* court's reliance on *Kurowski v. Rush Sys. for Health* is inapplicable, as the *Rush* court reversed its decision and upheld the plaintiff's Wiretap Act claim nine months later. *See* 2023 WL 8544084, at *3-4.

Stephen A. Beck

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff*