**UNITED STATES DISTRICT COURT**
**NOTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTISHA CARROLL, individually and on behalf of all other similarly situated, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 24-cv-12691 |
| LCA-VISION, Inc., d/b/a LASIKPLUS, | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

NOW COMES the Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, by and through its attorneys, CONNOLLY KRAUSE LLC, and for its reply in support of its Motion to Dismiss the Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) states the following.

**ARGUMENT**

Plaintiff's response leaves many issues of law unresolved, and the arguments made do not support this Court denying LASIK's motion to dismiss. First, Plaintiff's response fails to address the arguments raised by LASIK as to why Plaintiff and the putative class lack standing. Second, Plaintiff's response tries to gloss over the lack of support for the "interception" requirement of the ECPA. Also, Plaintiff's response attempts to stretch the definition of what constitutes PHI or PII in order to save these claims. In fact, all the arguments raised in opposition to dismissal of the negligence claims assume that what was allegedly intercepted by Facebook was PHI. Finally, Plaintiff's arguments make clear that Plaintiff and the putative class are seeking to create a private action for alleged violations of HIPAA, which should not be permitted. This Court should dismiss this complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).

## I. Plaintiff Did Not Suffer an Injury that is Fairly Traceable to LASIK To Establish Standing.

To understand just how detached LASIK is from the injury alleged in the complaint – this Court need only read the first several lines of the second paragraph in Section I of Plaintiff's response brief. (ECF 16, p. 9). Every sentence references allegations from the complaint describing Facebook's conduct and Facebook's policies, or the steps Facebook took when it created the alleged targeted ads that Plaintiff and the putative class received on their Facebook feed. While LASIK disputes that Plaintiff or the putative class suffered any real injury resulting from the allegations in the complaint – LASIK's primary arguments in support of dismissal are that the complaint alleges conduct that is traceable to Facebook and not LASIK as the true cause of the alleged injuries. (ECF 1, ¶¶ 33-35, 51, 53, 56-59).

There is no "meaningful connection" between the allegations made in the complaint and LASIK's conduct. *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. 2024). The complaint alleges that "Facebook caused the [Plaintiff's] browser to secretly duplicate the communication with [LASIK]…" (ECF 1, ¶ 36). The information that Plaintiff claims Facebook received as shown in Figure 1, would only be discernable by Facebook. (*Id.*). The data Facebook collected was "processed", "analyzed", and "assimilated" by Facebook in order to create the targeted ads. (*Id.*, ¶ 38). The mere fact that LASIK's website hosted a Meta Pixel is insufficient to connect LASIK to the alleged injury because the conduct that caused the alleged injury is directly traceable to Facebook. Therefore, Plaintiff has not, nor can she, allege facts that could support finding that Plaintiff or the putative class have satisfied the requirements of establishing Article III standing. Based on this, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II. Plaintiff's Argument that LASIK Intercepted Communications Falls Short.

Plaintiff's response ignores the plan language of the Act that requires a showing that LASIK, and not just Facebook, acquired the contents of any communication to qualify as an

interception by LASIK under the ECPA. 18 U.S.C. §2510(4). Plaintiff does not address the acquisition requirement in the response brief. Instead, Plaintiff relies on a case from the Central District of California to try and contradict the on-point, Northern District of Illinois case relied on by LASIK. In *Valentine*, Honorable Judge Edmond Chang clearly stated that a defendant "cannot be liable under the ECPA if it simply acts as a conduit to and from an entity that acquires the contents of a communication, but does not itself acquire those contents." *Valentine v. Wide Open West Finance, LLC*, 2013 U.S. Dist. LEXIS 139071, *10 (N.D. Ill. Sept. 27, 2013). The complaint specifically alleges that Facebook, not LASIK, received information, and that Facebook, not LASIK, collected and intercepted information. (ECF 1, ¶¶ 37-38). There are no allegations that LASIK acquired any of the alleged intercepted private information as required by the ECPA.

Plaintiff's reliance on *R.C. v. Walgreen Co.* to argue that the complaint satisfies the interception requirement is flawed. 2024 U.S. Dist. LEXIS 84744 (C.D. Cal. May 9, 2024). In that case, Walgreens never made the argument that the plaintiff failed to plead the acquisition requirement to show a violation of the ECPA. Instead, Walgreens argued that the ECPA claims should fail because the plaintiff did not "sufficiently plead (1) intent or (2) allege what contents of Plaintiff's communications were intercepted." *Id.* at *51. The focus of the court's analysis in *R.C.* was on whether the plaintiff sufficiently pled that confidential information was disclosed to Facebook. *Id.* Here, *Valentine* should control this Court's analysis on the interception requirement. 2013 U.S. Dist. LEXIS 139071 at *10. .Just as Judge Chang found in *Valentine*, this Court should also find that the complaint fails to allege LASIK acquired any intercepted communications in order to violate the plaint language of the ECPA. Therefore, the ECPA claims in the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. The Information Plaintiff Alleges Facebook Acquired Was Publicly Available Information and Not PHI.

Plaintiff tries to stretch the definition of "individually identifiable health information" beyond what is reasonable in an effort to save this complaint. A simple review of the encrypted data contained in Figure 1 of the complaint shows that none of the data details any "individual's past, present, or future physical or mental health or condition" or "the provision of health care to the individual." 42 U.S.C. § 1320d(6). Plaintiff's response fails to provide any clarity for the Court as to how the information Facebook received constitutes PHI as defined by the statute.

Plaintiff argues that LASIK disclosed information related to an alleged eye surgery consultation. However, nothing in Figure 1 could be construed as Plaintiff's or any putative class member's "physical or mental health condition" related to potential eye surgery. (ECF 1, ¶ 36). Nor does Figure 1 show any "provision of health care to [an] individual" related to a potential eye surgery. (*Id.*). There is no information about any specific health condition that Plaintiff is seeking to discuss with a LASIK provider in the alleged information that Facebook allegedly received.

Many of the cases Plaintiff relies on involve the acquisition of much more specific and private information which allowed the case to proceed. First, in *R.C. v. Walgreen Co.*, the plaintiff alleged that Walgreens "configured the Meta Pixel on its website to track, collect, and disclose 'custom events' such as the name of the sensitive healthcare products…[used] to diagnose and/or treat highly sensitive and private conditions…" 2024 U.S. Dist. LEXIS 84744 at*6. Additionally, the plaintiff alleged that the Meta Pixel used by Walgreens was "intentionally configured or authorized to use a feature called 'automatic advanced matching,' which scans forms on a website to identify fields that may contain personally identifiable information like a first name, last name, or email address, and then causes that information to be disclosed to [Facebook]". *Id.* at *7. Here, there are no allegations that LASIK's use of the Meta Pixel was allowing Facebook to have access to such obvious data or information that falls squarely within the definitions of PHI and PII.

Plaintiff also relies on *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025). In *Stein*, the plaintiff alleged that the Meta Pixel utilized by Edward "automatically transmit[ted] to Facebook every click, keystroke, and detail about [the patients'] medical treatment." *Id.* at *4. Additionally, the complaint alleged that Facebook was able to see what the plaintiffs communicated to their healthcare providers through the Edward website. *Id.* The court in *Stein* found the allegations sufficient to allege PHI because "Facebook knows everything you put into the web properties" when using Edward's website. *Id.*

The same distinction is important for *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sept. 9, 2024) and *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023). In *Aspen*, the plaintiffs alleged that the "tracking pixels are configured to collect Users' sensitive health information, such as <u>their status as patients</u>, medical appointments, healthcare providers, medical conditions, and treatments." *Aspen Dental*, 2024 U.S. Dist. LEXIS at *3. (emphasis added). Similarly, in *Kurowski*, the court found that the allegations in the plaintiffs' second amended complaint that Rush "transmitted the name and location of her personal physician as well as her physician's specialty" were sufficient to allege disclosure of IHII. *Kurowski*, 2023 U.S. Dist. LEXIS 219895 at * 7-8.

Here, Plaintiff and the putative class are relying solely on an alleged transmission of apparent interest in a consultation with LASIK at one of its nationwide centers. There are no allegations that Plaintiff or any of the putative class members were patients of LASIK. Patient status – despite Plaintiff's reference to the HHS guidance document, is an important factor as many courts have stated. *See Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 126777, *9-10 (N.D. Ill. July 24, 2023) ("Agency interpretations—such as the HHS guidance—that are arrived at in a less formal matter (i.e., not in the course of rulemaking and adjudication) do no warrant *Chevron* style deference."). There are no allegations that any specific health condition was

allegedly disclosed. Finally, the complaint concedes that Facebook never received any contact information from LASIK's website (e.g. name, email, address, phone number) that would specifically identify Plaintiff or any of the class members. (ECF 1, ¶¶ 41, 43). The cases cited by LASIK are directly on point as to this issue and Plaintiff's attempt to dismiss these cases affirms why this Court should rely on them. *See Doe v. Upperline Health, Inc.*, 2024 U.S. Dist. LEXIS 221634, *7 (S.D. Ind. Sept. 24, 2024) (finding the distinction of information communicated while using the public website versus private patient portal essential to the finding of whether PHI was communicated to Facebook); *see also Nienabar v. Overlak Hosp. Med. Ctr.*, 2024 U.S. Dist. LEXIS 86167, *8-9 (W.D. Wash. May 13, 2024) (finding that "transmission of information submitted to a private patient portal" constitutes PHI). The information allegedly intercepted by Facebook does not qualify as PHI or PII because it simply does not meet the definition pursuant to HIPAA and was all entered by Plaintiff and the putative class members through LASIK's public website.

### IV. Plaintiff's Negligence Arguments Do Not Weigh in Favor of Denying LASIK's Motion to Dismiss.

Plaintiff's entire argument in opposition to LASIK's motion to dismiss the negligence claims – assumes that Plaintiff has adequately pled an interception of PHI. As discussed *supra*, that supposition cannot stand. Furthermore, Plaintiff's response argues the existence of a duty that was not alleged in the complaint and therefore should not be considered or created out of whole cloth by this Court when ruling on LASIK's motion. *See Bruno v. Global Experience Specialists, Inc.*, 2020 U.S. Dist. LEXIS 161374, *8 (N.D. Ill. Sept. 3, 2020) ("It is basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") quoting *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (internal quotation marks omitted).

Plaintiff tries to cure the duty pleading deficiency in the complaint by arguing in the

response brief that "[LASIK] had a statutory duty to protect and safeguard Plaintiff's PHI." (ECF 16, p. 19). Plaintiff cites to *Smith v. Loyola University Medical Center* in support of this argument that LASIK owed a duty under Illinois' Personal Information Protection Act ("PIPA"). 2024 U.S. Dist. LEXIS 119995, *19 (N.D. Ill. July 9, 2024). Nowhere in the complaint does Plaintiff or the putative class reference PIPA at all, much less allege that LASIK had a statutory duty under PIPA. In fact, the complaint doesn't allege any statutory duty at all. Plaintiff cannot seek to amend her duty allegations in the response to LASIK's motion to dismiss and the attempt to do so highlights the deficiency of the pleading, making dismissal pursuant to Fed. R. Civ. P. 12(b)(6) appropriate.

### V. This Court Should Not Allow a Private ECPA Claim or Create a Negligence Action Seeking Redress for Alleged Violations of HIPAA.

Plaintiff's arguments continue to defy decades long statutory history and case law in seeking to construct a private right of action under HIPAA, which Congress expressly declined to do. This Court should not create a private cause of action under HIPAA by finding an alleged HIPAA violation can serve as the sole basis for ECPA and a state common law negligence claim to survive a motion to dismiss. Allowing this would be exactly the type of conduct that the United State Supreme Court sought to prohibit in *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

In *Sandoval*, the Supreme Court was clear – when considering whether to allow a private cause of action under substantive federal law, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* This case is the proverbial wolf dressed up in sheep's clothing. The complaint alleges a violation of HIPAA (ECF 1, ¶ 21) but seeks compensation for the alleged violation under two separate causes of actions. The Seventh Circuit has made clear – "HIPAA does not confer individual enforcement rights—express or implied." *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). "Under the Supreme Court's decision in *Alexander v. Sandoval*, Congress's choices about enforcement authority have consequences: 'The express provision of one method of

enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* quoting *Sandoval*, 532 U.S. at 290. Plaintiff's manufactured common law duties, that conveniently mirror HIPAA obligations, is an attempt to circumvent Congress's clear intent in precluding individual enforcement rights under HIPAA by disguising the alleged HIPAA violation as claim brought under the ECPA and general negligence, which cannot stand.

**CONCLUSION**

Plaintiff's response in opposition to LASIK's motion to dismiss does not provide a basis for this Court to deny LASIK's motion. The bottom line is that the complaint lacks support for the ECPA claims in Count I and the negligence claims in Count II because the information Facebook allegedly received from LASIK's website does not meet the definition of PHI or IIHI as laid out under HIPAA. There is a reason that many of the courts faced with these complaints allow the case to continue where the plaintiffs have alleged specific and detailed health information that was disclosed. That is just not the case here. A request for a consultation made on a publicly available website really in the equivalent of walking into a LASIK store to discuss making an appointment. There is no expectation of privacy for such publicly available information and therefore LASIK's motion should be granted.

WHEREFORE, Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, respectfully requests this Court to dismiss the class action complaint and all claims in their entirety with prejudice and for any other relief this Court deems just.

Respectfully submitted,

CONNOLLY KRAUSE LLC

By: /s/ *Corinne M. Cundiff*
One of the Attorneys for Defendant

Jeffrey J. Escher #6289438
Corinne M. Cundiff #6326784
CONNOLLY KRAUSE LLC
500 West Madison Street
Suite 3900
Chicago, Illinois 60661-2593
(312) 253-6200
jescher@cktrials.com
ccundiff@cktrials.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

/s/ Corinne M. Cundiff