**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTISHA CARROLL, individually and on behalf of all other similarly situated, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 24-cv-12691 |
| LCA-VISION, Inc., d/b/a LASIKPLUS, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SUPPLEMENTAL AUTHORITY INCORRECTLY FILED AS SECOND SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PENDING MOTION TO DISMISS**

NOW COMES the Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, by and through its attorneys, CONNOLLY KRAUSE LLC, and for its response to Plaintiff's Third Supplemental Authority Incorrectly Filed as Second Supplemental Authority in support of Plaintiff's Memorandum in Opposition to Defendant's pending Motion to Dismiss, states the following.

## ARGUMENT

Plaintiff's second supplemental authority ("herein referred to correctly as third supplemental authority") address many issues of law in this matter that were also addressed in Plaintiff's two prior supplemental authorities; however, the decision in Plaintiff's Third Supplemental Authority is distinguished from this matter as the facts and circumstances are intrinsically different. First, Plaintiff's supplemental authority identifies specific benefits derived from the communications collected. Second, Plaintiff's supplemental authority is distinguishable from the matter at hand. Third, the information that was received in Plaintiff's supplemental authority was private information, where the information received in the case at hand was publicly

assessable information. Lastly, numerous cases cited in Plaintiff's supplemental authority are distinguished in Defendant's Reply and Memorandum in support.

## I. Defendant Did Not Receive Any Benefit From Alleged Actions.

To understand just how detached LASIK is from the injury alleged in the complaint – this Court need only read the first several lines of the second paragraph in Section I of Plaintiff's response brief. (ECF 16, p. 9). Every sentence references allegations from the complaint describing Facebook's conduct and Facebook's policies, or the steps Facebook took when it created the alleged targeted ads that Plaintiff and the putative class received on their Facebook feed. While LASIK disputes that Plaintiff or the putative class suffered any real injury resulting from the allegations in the complaint – LASIK's primary arguments in support of dismissal are that the complaint alleges conduct that is traceable to Facebook and not LASIK as the true cause of the alleged injuries. (ECF 1, ¶¶ 33-35, 51, 53, 56-59).

There is no "meaningful connection" between the allegations made in the complaint and LASIK's conduct. *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. 2024). The complaint alleges that "Facebook caused the [Plaintiff's] browser to secretly duplicate the communication with [LASIK]…" (ECF 1, ¶ 36). The information that Plaintiff claims Facebook received as shown in Figure 1, would only be discernable by Facebook. (*Id.*). The data Facebook collected was "processed", "analyzed", and "assimilated" by Facebook in order to create the targeted ads. (*Id.*, ¶ 38). The mere fact that LASIK's website hosted a Meta Pixel is insufficient to connect LASIK to the alleged injury because the conduct that caused the alleged injury is directly traceable to Facebook. Therefore, Plaintiff has not, nor can she, allege facts that could support finding that Plaintiff or the putative class have satisfied the requirements of establishing Article III standing. Based on this, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiff's supplemental authority addresses the connection issue, however the main difference is that in the case in hand, LASIK received no benefit from the allegations. Even according to Plaintiff's supplemental authority, the Defendant must receive a benefit for them to be liable. At no point in Plaintiff's complaint did they claim that LASIK received a benefit or claimed a possible benefit for LASIK. Plaintiff's supplemental authority ignores the plan language of the Act that requires a showing that LASIK, and not just Facebook, acquired the contents of any communication to qualify as an interception by LASIK under the ECPA. 18 U.S.C. §2510(4). Plaintiff does not address the derived benefit requirement in the complaint and the supplemental authority does not magically add a benefit derived by LASIK in the case before the court. Instead, Plaintiff relies on a case from the Central District of California to try and contradict the on-point, Northern District of Illinois case relied on by LASIK. In *Valentine*, Honorable Judge Edmond Chang clearly stated that a defendant "cannot be liable under the ECPA if it simply acts as a conduit to and from an entity that acquires the contents of a communication, but does not itself acquire those contents." *Valentine v. Wide Open West Finance, LLC*, 2013 U.S. Dist. LEXIS 139071, *10 (N.D. Ill. Sept. 27, 2013). The complaint specifically alleges that Facebook, not LASIK, received information, and that Facebook, not LASIK, collected and intercepted information. (ECF 1, ¶¶ 37-38). There are no allegations that LASIK acquired any of the alleged intercepted private information as required by the ECPA.

Plaintiff's reliance on *R.C. v. Walgreen Co.* to argue that the complaint satisfies the interception requirement is flawed. 2024 U.S. Dist. LEXIS 84744 (C.D. Cal. May 9, 2024). In that case, Walgreens never made the argument that the plaintiff failed to plead the acquisition requirement to show a violation of the ECPA. Instead, Walgreens argued that the ECPA claims should fail because the plaintiff did not "sufficiently plead (1) intent or (2) allege what contents of Plaintiff's communications were intercepted." *Id.* at *51. The focus of the court's analysis in *R.C.*

was on whether the plaintiff sufficiently pled that confidential information was disclosed to Facebook. *Id.* Here, *Valentine* should control this Court's analysis on the interception requirement. 2013 U.S. Dist. LEXIS 139071 at *10. .Just as Judge Chang found in *Valentine*, this Court should also find that the complaint fails to allege LASIK acquired any intercepted communications in order to violate the plaint language of the ECPA. Therefore, the ECPA claims in the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Plaintiff's Supplemental Authority Is Distinguishable From The Matter At Hand.

Plaintiff's supplemental authority addresses many questions of law that are in question in the case in hand, however the key facts of this case distinguishes this case from Plaintiff's supplemental authority.

Plaintiff's response ignores the plan language of the Act that requires a showing that LASIK, and not just Facebook, acquired the contents of any communication to qualify as an interception by LASIK under the ECPA. 18 U.S.C. §2510(4). Plaintiff does not address the acquisition requirement in the response brief. Instead, Plaintiff relies on a case from the Central District of California to try and contradict the on-point, Northern District of Illinois case relied on by LASIK. In *Valentine*, Honorable Judge Edmond Chang clearly stated that a defendant "cannot be liable under the ECPA if it simply acts as a conduit to and from an entity that acquires the contents of a communication, but does not itself acquire those contents." *Valentine v. Wide Open West Finance, LLC*, 2013 U.S. Dist. LEXIS 139071, *10 (N.D. Ill. Sept. 27, 2013). The complaint specifically alleges that Facebook, not LASIK, received information, and that Facebook, not LASIK, collected and intercepted information. (ECF 1, ¶¶ 37-38). There are no allegations that LASIK acquired any of the alleged intercepted private information as required by the ECPA.

### III. The Information Plaintiff Alleges Facebook Acquired Was Publicly Available Information and Not PHI.

Plaintiff tries to stretch the definition of "individually identifiable health information" beyond what is reasonable in an effort to save this complaint. A simple review of the encrypted data contained in Figure 1 of the complaint shows that none of the data details any "individual's past, present, or future physical or mental health or condition" or "the provision of health care to the individual." 42 U.S.C. § 1320d(6). Plaintiff's response fails to provide any clarity for the Court as to how the information Facebook received constitutes PHI as defined by the statute.

Plaintiff argues that LASIK disclosed information related to an alleged eye surgery consultation. However, nothing in Figure 1 could be construed as Plaintiff's or any putative class member's "physical or mental health condition" related to potential eye surgery. (ECF 1, ¶ 36). Nor does Figure 1 show any "provision of health care to [an] individual" related to a potential eye surgery. (*Id.*). There is no information about any specific health condition that Plaintiff is seeking to discuss with a LASIK provider in the alleged information that Facebook allegedly received.

Many of the cases Plaintiff relies on involve the acquisition of much more specific and private information which allowed the case to proceed. First, in *Vriezen v. Infinite Health Collaborative, P.A.*, the court held that it is "plausible" that information transmitted to schedule an appointment with a physician could be used to identify the individual. *Vriezen v. Infinite Health Collaborative, P. A.*, No. 24-CV-3743 (NEB/DJF), 2025 WL 2992204, at *5-6 (D.Minn. Sept. 30, 2025). Additionally, the plaintiff alleged that the Meta Pixel used by Infinite Health Collaborative was "intentionally configured or authorized to use a feature called 'automatic advanced matching,' which scans forms on a website to identify fields that may contain personally identifiable information like a first name, last name, or email address, and then causes that information to be disclosed to [Facebook]". *Id.* at *7. Here, there are no allegations that LASIK's use of the Meta

Pixel was allowing Facebook to have access to such obvious data or information that falls squarely within the definitions of PHI and PII.

Plaintiff also relies on *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025). In *Stein*, the plaintiff alleged that the Meta Pixel utilized by Edward "automatically transmit[ted] to Facebook every click, keystroke, and detail about [the patients'] medical treatment." *Id.* at *4. Additionally, the complaint alleged that Facebook was able to see what the plaintiffs communicated to their healthcare providers through the Edward website. *Id.* The court in *Stein* found the allegations sufficient to allege PHI because "Facebook knows everything you put into the web properties" when using Edward's website. *Id.*

The same distinction is important for *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sept. 9, 2024) and *Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023). In *Aspen*, the plaintiffs alleged that the "tracking pixels are configured to collect Users' sensitive health information, such as <u>their status as patients</u>, medical appointments, healthcare providers, medical conditions, and treatments." *Aspen Dental*, 2024 U.S. Dist. LEXIS at *3. (emphasis added). Similarly, in *Kurowski*, the court found that the allegations in the plaintiffs' second amended complaint that Rush "transmitted the name and location of her personal physician as well as her physician's specialty" were sufficient to allege disclosure of IHII. *Kurowski*, 2023 U.S. Dist. LEXIS 219895 at * 7-8.

Here, Plaintiff and the putative class are relying solely on an alleged transmission of apparent interest in a consultation with LASIK at one of its nationwide centers. There are no allegations that Plaintiff or any of the putative class members were patients of LASIK. Patient status – despite Plaintiff's reference to the HHS guidance document, is an important factor as many courts have stated. *See Kurowski v. Rush Sys. for Health*, 2023 U.S. Dist. LEXIS 126777, *9-10 (N.D. Ill. July 24, 2023) ("Agency interpretations—such as the HHS guidance—that are arrived

at in a less formal matter (i.e., not in the course of rulemaking and adjudication) do no warrant *Chevron* style deference."). There are no allegations that any specific health condition was allegedly disclosed. Finally, the complaint concedes that Facebook never received any contact information from LASIK's website (e.g. name, email, address, phone number) that would specifically identify Plaintiff or any of the class members. (ECF 1, ¶¶ 41, 43). The cases cited by LASIK are directly on point as to this issue and Plaintiff's attempt to dismiss these cases affirms why this Court should rely on them. *See Doe v. Upperline Health, Inc.*, 2024 U.S. Dist. LEXIS 221634, *7 (S.D. Ind. Sept. 24, 2024) (finding the distinction of information communicated while using the public website versus private patient portal essential to the finding of whether PHI was communicated to Facebook); *see also Nienabar v. Overlak Hosp. Med. Ctr.*, 2024 U.S. Dist. LEXIS 86167, *8-9 (W.D. Wash. May 13, 2024) (finding that "transmission of information submitted to a private patient portal" constitutes PHI). The information allegedly intercepted by Facebook does not qualify as PHI or PII because it simply does not meet the definition pursuant to HIPAA and was all entered by Plaintiff and the putative class members through LASIK's public website.

## IV. Plaintiff's Supplemental Authority Cites Numerous Cases That Have Already Been Distinguished In Defendant's Memorandum In Support and Reply.

Plaintiff's supplemental authority relies upon numerous cases which have been addressed and distinguished in LASIK's reply and memorandum in support. As such, in *Vriezen v. Infinite Health Collaborative, P.A.*, to argue that the complaint satisfies the interception requirement is flawed. 2024 U.S. Dist. LEXIS 84744 (C.D. Cal. May 9, 2024). In that case, Infinite Health Collaborative never made the argument that the plaintiff failed to plead the acquisition requirement to show a violation of the ECPA. Instead, Infinite Health Collaborative argued that the ECPA claims should fail because the plaintiff did not "sufficiently plead (1) intent or (2) allege what contents of Plaintiff's communications were intercepted." *Id.* at *51. The focus of the court's

analysis in *Vriezen* was on whether the plaintiff sufficiently pled that confidential information was disclosed to Facebook. *Id.* Here, *Valentine* should control this Court's analysis on the interception requirement. 2013 U.S. Dist. LEXIS 139071 at *10. Just as Judge Chang found in *Valentine*, this Court should also find that the complaint fails to allege LASIK acquired any intercepted communications in order to violate the plaint language of the ECPA. Therefore, the ECPA claims in the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's entire argument in opposition to LASIK's motion to dismiss the negligence claims – assumes that Plaintiff has adequately pled an interception of PHI. As discussed *supra*, that supposition cannot stand. Furthermore, Plaintiff's response argues the existence of a duty that was not alleged in the complaint and therefore should not be considered or created out of whole cloth by this Court when ruling on LASIK's motion. *See Bruno v. Global Experience Specialists, Inc.*, 2020 U.S. Dist. LEXIS 161374, *8 (N.D. Ill. Sept. 3, 2020) ("It is basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") quoting *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (internal quotation marks omitted).

Plaintiff tries to cure the duty pleading deficiency in the complaint by arguing in the response brief that "[LASIK] had a statutory duty to protect and safeguard Plaintiff's PHI." (ECF 16, p. 19). Plaintiff cites to *Smith v. Loyola University Medical Center* in support of this argument that LASIK owed a duty under Illinois' Personal Information Protection Act ("PIPA"). 2024 U.S. Dist. LEXIS 119995, *19 (N.D. Ill. July 9, 2024). Nowhere in the complaint does Plaintiff or the putative class reference PIPA at all, much less allege that LASIK had a statutory duty under PIPA. In fact, the complaint doesn't allege any statutory duty at all. Plaintiff cannot seek to amend her duty allegations in the response to LASIK's motion to dismiss and the attempt to do so highlights the deficiency of the pleading, making dismissal pursuant to Fed. R. Civ. P. 12(b)(6) appropriate.

## CONCLUSION

Plaintiff's supplemental authority in opposition to LASIK's motion to dismiss does not provide a basis for this Court to deny LASIK's motion. The bottom line is that the supplemental authority from Plaintiff does not cure the complaint lacks support for the ECPA claims in Count I and the negligence claims in Count II because the information Facebook allegedly received from LASIK's website does not meet the definition of PHI or IIHI as laid out under HIPAA. Nor does the complaint cite any benefit received by Defendant. There is a reason that many of the courts faced with these complaints allow the case to continue where the plaintiffs have alleged specific and detailed health information that was disclosed. That is just not the case here. A request for a consultation made on a publicly available website really in the equivalent of walking into a LASIK store to discuss making an appointment. There is no expectation of privacy for such publicly available information and therefore LASIK's motion should be granted.

WHEREFORE, Defendant, LCA-VISION, Inc. d/b/a LASIKPLUS, respectfully requests this Court to dismiss the class action complaint and all claims in their entirety with prejudice and for any other relief this Court deems just.

Respectfully submitted,

CONNOLLY KRAUSE LLC

By: ___/s/ *Kevin S. Ward*_____
One of the Attorneys for Defendant

Jeffrey J. Escher #6289438
Kevin S. Ward #6344400
CONNOLLY KRAUSE LLC
150 N Michigan Ave.
Suite 1000
Chicago, Illinois 60601
(312) 253-6200
jescher@cktrials.com
kward@cktrials.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

*/s/ Gwendolyn Dunbar*